A99A1627. COWAN v. THE STATE.
(531 SE2d 785)

PHIPPS, Judge.

A jury found Anthony Lamar Cowan guilty of two counts of armed robbery, two counts of possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. The trial court sentenced him to two consecutive terms of life imprisonment for the armed robberies and to concurrent five-year sentences for each of the remaining crimes. After the trial judge denied Cowan's motion for new trial, he appealed, contesting the jury selection process, the sufficiency of the evidence, the admission of certain evidence, a photographic lineup procedure, the failure to charge on alibi, the use of his prior felony convictions in aggravation of sentencing, a delay in receipt of his trial transcript for appeal, and the effectiveness of his trial counsel. Having determined that no reversible error occurred and that the evidence was sufficient to support the verdict, we affirm.

1. On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence.[1] This court determines whether the evidence is sufficient under the standard of Jackson v. Virginia[2] and does not weigh the evidence or determine witness credibility.[3] Conflicts in the evidence are for the jury to resolve.[4]

The State presented the testimony of Derrick Walker, who pled guilty for his participation in the crimes. Walker testified that on August 27, 1995, he and Cowan drove to a Crown convenience store

---

[23] Bohannon v. State, 208 Ga. App. 576, 580 (2) (d) (431 SE2d 149) (1993).
[1] Patterson v. State, 225 Ga. App. 515 (484 SE2d 317) (1997).
[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] Patterson, supra, 225 Ga. App. at 515.
[4] Id.

in a stolen white Mitsubishi 3000 GT that he had "purchased" for $20. Cowan robbed the cashier at gunpoint. They also took beer and Atlanta Braves hats. Then they drove to a nearby Krystal fast-food restaurant. When they got to the drive-through window, Cowan got out, walked to the window, and robbed the cashier at gunpoint.

Walker testified that the next day, he and Cowan drove to a Kentucky Fried Chicken fast-food restaurant to rob it. They drove to the drive-through window, but when Cowan got out of the car, a police patrol car drove up behind them. Walker drove away, leaving Cowan at the scene.

The arresting officer testified that as he was apprehending Cowan, a small gun fell from Cowan's clothing. Cowan was wearing an Atlanta Braves hat. At trial, the officer identified Cowan as the person apprehended and described the car driven by Walker as a White Mitsubishi 3000 with Georgia tag number "YEC 705."

Cowan challenges the sufficiency of the evidence, contending that his conviction was based on the uncorroborated testimony of Walker, an accomplice. But the rule that a felony conviction may not be based upon the uncorroborated testimony of an accomplice applies only when the accomplice is the sole witness upon whose testimony the State relies.[5] Here, the State introduced other evidence which, independently of the accomplice's testimony, directly connects Cowan to the crimes.

(a) The Crown convenience store manager testified that on the night of the armed robbery, the store's videocamera system was programmed to record the cashier's area. He testified that after the robbery, he went to the store, confirmed that the videocamera had recorded the robbery, and gave the videotape to police. He also testified that at the time of the armed robbery, the store had for sale Atlanta Braves hats and the size and kind of beer taken.

Elsa Asmelash, the victim of the Crown convenience store armed robbery, testified that on August 27, 1995, at around 10:30 p.m., two men drove up in a white car, entered the store, walked to the cashier's counter, and demanded money at gunpoint. After taking money from the cash drawer, the robbers then took hats and beer. Asmelash watched the men drive away, memorizing "705" as part of the car's tag number.

With Asmelash on the witness stand, the videotape was admitted into evidence. As the videotape played, Asmelash described the activities on the tape. As one of the men threatened her with the gun, she handed over the money from the cash drawer, and the men approached the hats and took beer. She then pointed to Cowan, in the

[5] OCGA § 24-4-8; *Telfair v. State*, 234 Ga. App. 444, 445 (507 SE2d 195) (1998).

courtroom, and identified him as the gunman seen in the video. Cowan's argument that Asmelash failed to identify his picture before trial merely raises an issue of the weight to be given her testimony.[6]

(b) Regarding the Krystal fast-food restaurant robbery, Detective Veillon of the DeKalb County Police Department testified that Stanley Shanks, the victim of the Krystal armed robbery, identified Cowan from a photographic lineup as the robber. Although Cowan complains that Veillon's testimony is hearsay, "[a] law enforcement officer is permitted to testify to a vocal fact of identification witnessed by himself without its being subject to a hearsay objection."[7]

(c) The State introduced certified copies of Cowan's nine prior Texas felony convictions to support the charge of possession of a firearm by a convicted felon.

The record shows that the State introduced evidence, including testimony of the victims' identification of Cowan as the person who robbed them at gunpoint, which independently of the accomplice's testimony directly connected Cowan to the armed robberies. The evidence was sufficient to support Cowan's conviction.[8]

2. The State presented evidence, as a similar transaction, of an armed robbery at an Arby's fast-food restaurant on the day before the armed robberies for which Cowan was convicted. Corey Harris testified that he was working at the restaurant's drive-through window when a car arrived. A man got out of the car, walked to the window, threatened him with a gun, and demanded money. Harris described the car as a white "Eclipse" with tag number "YEC 705." He testified that he later identified Cowan as the robber. An eyewitness to the Arby's robbery also testified that Cowan was the robber.

Cowan contests the admission of the similar transaction evidence on several grounds.

(a) Relying on *Gilstrap v. State*,[9] Cowan contends that the trial court erroneously admitted the similar transaction evidence before the admission of any evidence concerning the charges in the indictment on trial. In *Gilstrap*, the trial court permitted the State to introduce evidence of nine similar transactions before it had offered any evidence concerning the charges in the indictment on trial.[10] The trial court has discretion as to the order of admission of evidence, but that discretion is not unlimited.[11] *Gilstrap* concluded that the procedure followed in the trial court raised a substantial possibility that

[6] *West v. State*, 218 Ga. App. 341 (1) (461 SE2d 300) (1995).
[7] (Citations and punctuation omitted.) *Neal v. State*, 211 Ga. App. 829, 830 (1) (440 SE2d 717) (1994).
[8] See *Jackson v. Virginia*, supra, 443 U. S. at 307.
[9] 261 Ga. 798, 799 (2) (410 SE2d 423) (1991).
[10] Id.
[11] Id.

the jury could have settled upon the guilt of the defendant based solely upon evidence of a large number of similar transactions before hearing a single witness testify as to the indicted offenses.[12] *Gilstrap*, however, expressly declined to determine the limits of the trial court's discretion as to the order of the admission of evidence.[13]

Unlike in *Gilstrap*,[14] here the State presented evidence of only one similar transaction before presenting evidence of the indicted offenses. The trial court did not abuse its discretion in allowing the State to do so.[15]

(b) Cowan contends that the trial court erred in admitting similar transaction evidence although the State had not complied with *Williams v. State*,[16] asserting that at the pretrial hearing to determine the admissibility of the evidence, the State did not articulate the purposes of the evidence. *Williams* requires that the State make an affirmative showing that it "seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility."[17] The record demonstrates that after the State proffered evidence of the similar transaction at the pretrial hearing, the trial court determined that the State had made that showing. Moreover, Cowan did not object at trial to the admission of the evidence on that ground. Thus he failed to preserve the argument for our consideration on appeal.[18]

(c) Cowan contends that the trial court erred by giving an instruction on similar transaction evidence that did not adequately limit how the jury was to consider the evidence. Prior to the State presenting the similar transaction evidence, the trial court gave the following instruction:

> Members of the jury; I understand this will be proffered evidence of something that may or may not have happened down in Fulton County. . . . [T]he State may only offer this evidence to show, if it does, the defendant's motive, bent of mind, plan, scheme, course of conduct, or other matters depending on the person's state of mind, and he is not on trial for anything that may have happened that this witness may or may not testify to about here.

---

[12] Id.

[13] Id.

[14] Id.

[15] See *Charo v. State*, 206 Ga. App. 297, 298 (424 SE2d 900) (1992).

[16] 261 Ga. 640, 642 (1) (b) (409 SE2d 649) (1991).

[17] (Footnote omitted.) Id.

[18] *Hunter v. State*, 202 Ga. App. 195, 198 (3) (413 SE2d 526) (1991).

Cowan complains that the trial court's instruction authorized the evidence for many purposes. But the mere fact that the Court permitted multiple purposes does not render the instruction inadequate,[19] and the stated purposes bear upon relevant questions in this case.[20]

(d) Cowan contends that the trial court erred by allowing the State to present testimony that he had been indicted for the similar transaction. But Cowan failed to object to the introduction of the evidence at trial, which waived the issue on appeal.[21] "[T]he rule requiring a trial objection on similar transaction evidence is firm in Georgia jurisprudence, and we are bound to follow it."[22]

3. Cowan contends that he was denied the right to select jurors from a fair cross-section of the community. The Court Administrator for the DeKalb Superior Court testified that the county uses figures from the 1990 Census to draw demographically proportionate pools of jurors from voter registration files. When potential jurors appear for jury duty, they are placed on jury panels through random computer selection. There are no further attempts to impanel a jury in a particular case with a certain racial makeup. He testified that the 1990 population of DeKalb County and the pool of jurors from which panels are drawn were both 37.8 percent African-American. Cowan complained that the panels brought to the court for his trial were only 28.5 percent African-American and requested that the trial court add some African-Americans. The trial court denied Cowan's request.

DeKalb County's random jury panel selection process does not show unconstitutional jury discrimination,[23] and the trial court did not err in so finding.

4. Cowan contends that hearsay statements of nontestifying witnesses to the Krystal armed robbery were erroneously allowed into evidence. A police officer testified that Shanks and Anwar Bass, who were working at the Krystal restaurant at the time of the armed robbery, gave him descriptions of the suspects, the vehicle, and the events. But Cowan's accomplice also testified to the same facts, without objection. Therefore, even if the admission of the complained-of testimony was error, the error was harmless.[24]

---

[19] See generally *Jones v. State*, 236 Ga. App. 330, 332 (1) (a) (511 SE2d 883) (1999).

[20] *Williams*, supra, 261 Ga. at 642 (2) (b), n. 2.

[21] *Young v. State*, 269 Ga. 478, 479 (3) (499 SE2d 60) (1998).

[22] (Footnote omitted.) *McClarity v. State*, 234 Ga. App. 348, 350 (2) (506 SE2d 392) (1998).

[23] See generally *Larmon v. State*, 256 Ga. 228 (345 SE2d 587) (1986).

[24] *Cherry v. State*, 230 Ga. App. 443, 446 (4) (496 SE2d 764) (1998) (where the same fact has been admitted in evidence before the jury, without objection, such admitted evidence renders harmless the admission of the same evidence over objection).

5. Cowan testified that he was working on the nights in question and now complains that the trial court erred by not giving the jury a sua sponte charge on his sole defense of alibi. He relies on *Chapel v. State*[25] and *Tarvestad v. State*[26] for the proposition that the trial court must give a charge on the sole defense even when not requested if there is some evidence to support it. Cowan's reliance is misplaced. In *Chapel*,[27] the trial court gave an instruction regarding alibi, and *Tarvestad*[28] concerned the defense of justification. Unlike justification,

> alibi is not an affirmative defense. . . . It generally challenges the assertion of defendant's presence at the scene of the crime, obviously a necessary element. . . . [I]t was not error for the court to fail to charge specifically on alibi absent a request. The rationale is that "since the true effect of an alibi defense is to traverse the state's proof that the defendant committed the crime, the charge that the burden is on the state to prove that the defendant committed the crime beyond a reasonable doubt itself necessarily covers the question of whether the evidence of alibi was sufficient to create a reasonable doubt."[29]

Moreover, "[Cowan's] testimony concerning his whereabouts at the time the crime[s] [were] being committed is vague and uncertain, and it does not negate the possibility of his presence at the scene. [Cit.]"[30] Cowan testified that on the night of the Crown and Krystal robberies, he went to work at an Amoco gas station, located on Ponce de Leon Avenue, at approximately 10:00 p.m., where he cleaned the parking lot. He testified that it "only takes [him] about 30 minutes to finish [working]." There is no evidence in the record of Cowan's whereabouts afterward. Asmelash, the victim of the Crown armed robbery, testified that the two men drove up at "approximately" 10:30 p.m. Officer Barstow of the DeKalb County Police Department stated that he received the Krystal restaurant robbery call at 10:36 p.m. The distance between the Crown station and the Krystal restaurant is approximately one mile and could have been driven within two minutes.

---

[25] 270 Ga. 151 (510 SE2d 802) (1998).

[26] 261 Ga. 605, 606 (409 SE2d 513) (1991).

[27] Supra, 270 Ga. at 156-157 (7).

[28] Supra, 261 Ga. at 605-606.

[29] (Footnotes omitted.) *Seese v. State*, 235 Ga. App. 181, 182-183 (1) (509 SE2d 94) (1998).

[30] *Dixon v. State*, 157 Ga. App. 550 (1) (278 SE2d 130) (1981); OCGA § 16-3-40 (the defense of alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission).

The range of the evidence with respect to time and place fails to "exclude the possibility of [Cowan's] presence" at the scene of the crimes.[31] Under these circumstances, there was no reversible error in the court's failure to charge on alibi.

6. At the pretrial hearing to determine the admissibility of the similar transaction evidence, Harris, the victim of the similar transaction, testified that he did not initially identify Cowan when the police officer showed him a photographic display. But after the police officer showed Harris the photographic display again, he identified Cowan as the gunman who robbed him. Cowan complains that the second showing "pressured" Harris and contends that the trial court erred by admitting testimony of a highly suggestive lineup.

Pretermitting whether this contention was preserved for appeal, it is error to allow testimony concerning a pretrial identification of the defendant,

> if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. A court need not consider whether there was a substantial likelihood of misidentification if it determines that the identification procedure was not impermissibly suggestive. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of [a] defendant as the perpetrator or [when it] is the equivalent of the authorities telling the witness, [t]his is our suspect.[32]

The detective testified that in constructing the photographic lineup, he selected photographs of other individuals of similar age and with similar facial features and other characteristics. He asked Harris to look at the photographs but advised him that "he didn't have to pick out anybody." Although Harris selected no one when the lineup was initially shown to him, he later selected Cowan. The record shows that Harris had ample opportunity to observe Cowan during the robbery, and Harris testified that "[a]ll I know is the picture that I saw was the picture of the guy that robbed me. Because I slept with that for a while."

The record contains no evidence that the photographic lineup was assembled or presented in an impermissibly suggestive manner.

---

[31] See OCGA § 16-3-40.

[32] (Citations and punctuation omitted.) *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999).

7. Cowan contends that the trial court erred in charging:

> While the law requires the State to prove the defendant's guilt to your satisfaction beyond a reasonable doubt, the law does not require the State to prove the defendant's guilt to an absolute or mathematical certainty beyond all doubt. A reasonable doubt is not an imaginary doubt. Neither does it mean the mere possibility that the defendant may be innocent. But as I said to you just now, it means a doubt that is founded upon reason.

Cowan argues that the phrase, "[n]either does it mean the mere possibility that the defendant may be innocent," lessened the State's burden of proof and constitutes reversible error. We do not agree. The correct inquiry to determine whether a trial court's instruction on the State's burden of proof allowed a finding of guilt based on a degree of proof below that required by due process is whether there is a "reasonable likelihood" that the jury applied the instruction in a constitutionally impermissible manner.[33] "The word 'possibility' in the trial court's charge would have been understood by the jury to constitute only a synonym of the vague, imaginary and fanciful doubts previously discussed by the trial court."[34] Therefore, after considering the charge as a whole, we find no reasonable likelihood that the jury applied a standard of proof less stringent than that required by the state and federal due process clauses or other applicable law.[35]

8. The State introduced certified copies of Cowan's nine prior Texas felony convictions to prove that he was a convicted felon in possession of a firearm. The trial court considered the same prior convictions at sentencing. Relying on *State v. Freeman*,[36] Cowan contends that the trial court erred in doing so.

*Freeman* ruled that evidence of a prior felony conviction, necessary to prove possession of a firearm by a convicted felon, could not also be used to enhance punishment of that crime under OCGA § 17-10-7 (a).[37] *Freeman* concluded that the punishment provisions established for the offense may be the only standard applied in sentencing.[38] For the charges of possession of a firearm by a convicted felon, Cowan received two five-year sentences. Those sentences were per-

---

[33] *Estelle v. McGuire*, 502 U. S. 63, 72, n. 4 (112 SC 475, 116 LE2d 385) (1991); *Coleman v. State*, 271 Ga. 800, 804 (8) (523 SE2d 852) (1999).

[34] Id.

[35] See id. (while disapproving the continued use of the challenged charge, the Court determined that the complained-of language did not require reversal — decided after Cowan's trial).

[36] 198 Ga. App. 553 (402 SE2d 529) (1991).

[37] Id. at 554-555 (1).

[38] Id. at 555 (1).

missible.[39] Cowan's life imprisonment sentences for the armed robberies also were within the permissible range of punishment authorized for armed robberies under OCGA § 16-8-41 (b).

"[T]here is a presumption that [a] sentence was correctly imposed, and the burden of showing that a sentence was not correctly imposed is with the party who asserts its impropriety."[40] Cowan has failed to carry that burden.

9. Cowan contends that he was denied due process by a 19-month delay in receipt of the transcript for appeal. Whether a delay in the appellate process violates due process depends on (1) the length of the delay, (2) the cause of the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.[41]

Here, Cowan has failed to show that the delay prevented him from presenting an adequate appeal or impaired a defense which otherwise would have been available. Moreover, none of Cowan's other enumerations of error warrant a new trial. Under these circumstances, we conclude there was no violation of due process.

10. Cowan contends that the trial court erred in finding that his trial counsel rendered effective assistance. He complains that counsel was ineffective for failing to request a jury charge on the defense of alibi, failing to fully investigate his alibi defense and subpoena witnesses in support of that defense, and failing to present any evidence in mitigation at his sentencing hearing.

To establish ineffectiveness, an appellant must show that (1) counsel's performance was deficient, and (2) the deficiency so prejudiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency.[42] We need not address both prongs of this test if the showing on one prong is insufficient, nor must we address them in any particular order.[43] We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[44]

(a) Cowan complains that trial counsel was ineffective by failing to request a jury charge on the defense of alibi. Our ruling in Division 5 controls this issue adversely to Cowan.

(b) Cowan's trial counsel testified at the motion for new trial hearing that during his investigation of Cowan's alibi, he learned that Cowan's supervisor at Amoco had reported to police that she had

---

[39] OCGA § 16-11-131 (b).

[40] (Citation omitted.) *Freeman*, supra, 198 Ga. App. at 557 (3).

[41] *Graham v. State*, 171 Ga. App. 242, 250-251 (7) (319 SE2d 484) (1984).

[42] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Etheridge v. State*, 228 Ga. App. 788, 789 (2) (492 SE2d 755) (1997).

[43] *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991).

[44] *Smith v. State*, 256 Ga. 483 (351 SE2d 641) (1986).

seen Cowan leave with Walker in a white car the day after the robberies. He stated,

> [f]rom that, it didn't really sound to me like we wanted to find his alibi witness, because his alibi witness is telling the police . . . she saw him with the co-defendant getting into a white car. And shortly after that the co-defendant comes by and ditches the white car after he is chased by the Atlanta police. . . . [It] sounds like she would be a great witness for the State.

Trial counsel stated that he "really did not think [it] was in his best interest to bring [the Amoco manager] in."

Trial counsel also testified that Cowan later told him about another alibi witness at a Chevron station, saying that he was working there for somebody but was not sure of his manager's name. When trial counsel's investigator went to the station and showed Cowan's picture to the manager, the manager did not recognize Cowan.

We find that trial counsel's performance in this regard falls within the wide range of reasonable professional assistance. Further, the record does not show that there were any other witnesses who could have testified in Cowan's defense. And Cowan has presented no evidence as to what any other witnesses would have testified in support of his alibi.

(c) The record contains no evidence of what any witnesses might have said on Cowan's behalf at his sentencing hearing. The record shows that during sentencing, trial counsel asked Cowan whether he wanted to speak, but he declined to do so.

We conclude that the trial court did not err in finding that trial counsel's representation was not deficient.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 21, 2000 —
RECONSIDERATION DENIED APRIL 10, 2000 — 

*Timothy W. Hoffman,* for appellant.
*J. Tom Morgan, District Attorney, Jennifer M. Daniels, Maria Murcier-Ashley, Assistant District Attorneys,* for appellee.