## A03A0656. TENORIO v. THE STATE.
(583 SE2d 269)

RUFFIN, Presiding Judge.

A jury found Alvaro Tenorio guilty of armed robbery. He appeals, challenging the admissibility of identification evidence, the court's jury charge, and the effectiveness of trial counsel. Although we find no error in the trial court's evidentiary ruling or jury charge, we must reverse and remand for a new trial because Tenorio did not receive effective assistance of counsel.

1. Tenorio first argues that the trial court erred in failing to suppress pretrial identification evidence. We disagree.

"To determine whether evidence of pretrial identification should be excluded, we first consider whether the identification procedure was impermissibly suggestive. If it was, then we consider whether there was a very substantial likelihood of irreparable misidentification."[1] The identification procedure is impermissibly suggestive "when it leads the witness to an all but inevitable identification of [the] defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'This is our suspect.' "[2] On appeal, the evidence must be construed favorably to uphold the trial court's finding and judgment, and the trial court's ruling regarding admissibility will be affirmed absent clear error.[3]

Viewed in this manner, the evidence shows that John Howland, a jewelry salesman, was traveling in the Atlanta area on business on March 6, 2000. Howland parked his car at his Gwinnett County hotel around 9:00 p.m., retrieved his briefcase from the trunk, and walked back to the front of his car. At that point, a man ran toward Howland, pointed a pistol at his face, and said: "Give me the bag or I [will] kill you." Howland gave the gunman his briefcase, and the gunman waved him toward the hotel. Howland entered the hotel, but turned around in time to see the gunman jump into a gold car with a drive-out tag occupied by a woman with long, blonde hair. According to Howland, the briefcase contained jewelry with a retail value of $250,000.

---

[1] (Footnote omitted.) *Brodes v. State*, 250 Ga. App. 323, 325 (2) (551 SE2d 757) (2001).

[2] (Punctuation omitted.) *Karim v. State*, 244 Ga. App. 282, 283 (2) (535 SE2d 296) (2000).

[3] See id. at 283-284.

Howland immediately reported the robbery to the police. He provided a description of the gunman's ethnicity, weight, height, hair color, and approximate age. A few days later, the police received a tip regarding Tenorio and assembled a lineup of six photographs that included his picture. The investigating officer apparently delayed six weeks before sending the lineup to Howland, but eventually mailed it to his office in New York. Along with the lineup, the investigating officer included a letter, which instructed Howland as follows:

> Look at all six photos. If you are 100 percent sure that one of the persons pictured is the perpetrator in this crime then simply place the number of the photograph which represents who you chose on the affidavit then sign and date it.

The officer also spoke to Howland on the telephone, explaining that the photographs "very well could be nobody."

When Howland received the materials, he read the investigator's instructions, reviewed the lineup, and selected Tenorio's photograph. Howland testified that the officer did not indicate to him which picture to select, threaten him, or pressure him to choose any picture. He also testified that he was "100 percent" certain about the identification. At the suppression hearing, Howland further noted that the parking lot where the robbery occurred was well lit, he observed the robber's face for approximately fifteen seconds, and, at one point during the robbery, he was two to three feet from the gunman.

The trial court denied Tenorio's motion to suppress, concluding that the photographic lineup was not impermissibly suggestive. We find no error. The lineup contains head shots of six men, all of whom have dark hair and appear to be of similar ethnicity. The head shots are basically the same size, and each rests on a white background.

On appeal, Tenorio argues that he is " 'noticeably older' " than the other individuals depicted in the lineup. Although we agree that several of the men pictured do look younger, we cannot conclude that Tenorio is " 'noticeably older' " or that all of the other subjects fell outside the 40- to 50-year-old age range Howland provided police. Furthermore, Howland testified that four of the photographed men — including Tenorio — definitely fell within his described age range.

Neither the differences between the photographs, nor the circumstances surrounding the identification, " 'lead the viewer inexorably to conclude that [Tenorio] was the suspect.' "[4] Given the testi-

---

[4] *Brodes,* supra at 326 (although two men pictured in photographic lineup appeared much older than defendant, lineup not impermissibly suggestive); see also *Rubi v. State,* 258 Ga. App. 815, 816-817 (1) (575 SE2d 719) (2002) (lineup not impermissibly suggestive, despite defendant's claim that the other photographed individuals differed from him in skin

mony and evidence presented below, including the lineup itself and the investigating officer's instructions to Howland, the trial court did not err in admitting evidence of the pretrial identification.[5]

2. Tenorio also argues that the trial court erred in instructing the jury with the pattern jury charge on eyewitness identification testimony. He contends that the pattern charge has been questioned in Georgia. Citing expert evidence that he presented at the hearing on his motion for new trial, he further argues that the trial court should have given a significantly modified charge.

The record shows, however, that Tenorio did not submit a written request incorporating these modifications and thus cannot now complain about the court's charge.[6] Furthermore, Tenorio concedes that the presence of "expert testimony [on eyewitness identification] is the only reason why a charge other than a pattern charge is appropriate in this case."[7] But Tenorio did not offer any expert testimony at trial — his expert witness did not testify until the hearing on his motion for new trial. Accordingly, the trial court did not err in using the pattern instruction on identification evidence.[8]

3. Finally, Tenorio claims that trial counsel failed to sufficiently investigate his case and thus provided ineffective assistance at trial.[9] We agree.

To establish ineffective assistance of counsel, Tenorio "must show that (1) counsel's performance was deficient, and (2) the deficiency so prejudiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency."[10] Furthermore, "strategic choices, such as which witnesses to call or whether and how to conduct cross-examination, made after a thorough investigation are virtually unchallengeable."[11]

The record shows that Tenorio presented an alibi defense at trial. At the time of the robbery, Tenorio worked at a grocery store in Tifton, which is approximately three and one-half hours away from

coloration, hair, and facial hair); *Brewer v. State*, 219 Ga. App. 16, 20 (6) (463 SE2d 906) (1995) ("The contention that the shading and tone of defendant's photograph made this photographic identification procedure unduly suggestive is without merit."); *Green v. State*, 219 Ga. App. 878, 880-881 (467 SE2d 203) (1996) (fact that defendant was "heavy-set" man, and several other individuals photographed were not "heavy-set," did not render photographic lineup impermissibly suggestive).

[5] See *Rubi*, supra; *Brodes*, supra.

[6] See *Caldwell v. State*, 263 Ga. 560, 564 (10) (436 SE2d 488) (1993); *Johnson v. State*, 237 Ga. 495 (2) (228 SE2d 879) (1976).

[7] See *Armstead v. State*, 255 Ga. App. 385, 387 (2) (565 SE2d 579) (2002) (rejecting similar challenge to pattern jury instruction on identification evidence).

[8] See id.

[9] On appeal, Tenorio raises numerous other claims relating to ineffective assistance of counsel. Because we find this claim dispositive, we need not address his other allegations.

[10] *Cowan v. State*, 243 Ga. App. 388, 396 (10) (531 SE2d 785) (2000).

[11] *Skillern v. State*, 240 Ga. App. 34, 36-37 (3) (521 SE2d 844) (1999).

Gwinnett County. Tenorio's supervisor, Nathan Ooten, testified that Tenorio arrived at work on March 6, 2000, clocked in just after 10:00 p.m., immediately got into a dispute with Ooten, and left the store ten or fifteen minutes later. Tenorio's stepdaughter also testified that, shortly after 10:00 p.m., Tenorio returned home, angry about the dispute at work. In response to this testimony, the State established that both the stepdaughter and Ooten, who was dating the stepdaughter, had personal relationships with Tenorio that might affect their bias.

A time sheet from the grocery store indicated that, at 10:09 p.m., approximately one hour after the robbery occurred, Tenorio clocked into work. The investigating officer conceded that it would be "physically impossible" for a person to be in Tifton one hour after committing a robbery in Gwinnett County. But he further noted that the store manager changed the time sheet several days later by "clocking" Tenorio out at 10:09 p.m., the time he allegedly "clocked in." The grocery store manager explained that she altered the time card because she determined that Tenorio "wasn't there" that night. The manager admitted, however, that she was not present in the store when, according to Tenorio, he "punched in" for work, and then left a few minutes later.

In connection with his motion for new trial, Tenorio submitted the affidavits of two additional grocery store employees. Russell Clinton, the assistant store manager, testified that Tenorio telephoned him at approximately 10:30 p.m. on March 6, 2000, and reported that he had left work early that night following a dispute with Ooten. Richard Williams, one of Tenorio's co-workers, testified that he saw Tenorio arrive for his 10:00 p.m. to 6:00 a.m. shift, but that Tenorio left early following the dispute.

At the new trial hearing, trial counsel testified that Tenorio asked her to speak with "Mr. Russell," the assistant manager, about his alibi. She further testified that she sent an investigator, Larry Titshaw, to the grocery store to locate witnesses, but he did not bring her any names.[12] According to counsel, she relied on the information provided by Titshaw and assumed no favorable witnesses could be found.

Following the trial, however, counsel learned that Titshaw may have billed for services he never performed. She asserted at the new trial hearing that she would not now trust the information Titshaw provided and that he did not make a diligent effort to locate alibi witnesses. Tenorio's wife also submitted an affidavit, stating that Titshaw gave her a stack of blank subpoenas and told her to "serve the

---

[12] Based on information provided by Tenorio, trial counsel located Ooten herself.

subpoenas on anyone who could help [her] husband in court." The evidence further shows that Titshaw never contacted Clinton or Williams.

Under these circumstances, we find trial counsel's pretrial investigation deficient. Titshaw exercised no diligence in investigating Tenorio's alibi, instead asking Tenorio's wife to do his job by searching for and serving subpoenas on potential witnesses. Consequently, trial counsel, who relied on Titshaw, failed to reasonably investigate the case.[13] The fact that Titshaw, rather than trial counsel, shirked his assigned duties does not matter. As trial counsel noted at the new trial hearing, she was ultimately responsible for ensuring a thorough investigation.[14]

Furthermore, a reasonable possibility exists that, but for this deficient investigation, the outcome of the trial would have been different. The State's case centered entirely around Howland's identification testimony. The investigating officer admitted at trial that no physical evidence tied Tenorio to the robbery. Police never located the jewelry, the gun, the getaway car, or the blonde accomplice. According to the investigating officer, "[n]o evidence of the crime was found."

The State's underwhelming evidence rendered the strength of Tenorio's alibi particularly crucial. Although the defense called two alibi witnesses, both had close personal ties with Tenorio, raising issues of bias. Trial counsel's failure to conduct a reasonable investigation and locate disinterested witnesses, one of whom Tenorio described to her before trial by first name and job title, prejudiced the defense.[15] Accordingly, Tenorio is entitled to a new trial.[16]

*Judgment reversed and case remanded. Smith, C. J., and Miller, J., concur.*

---

[13] See *Zant v. Hamilton*, 251 Ga. 553, 555 (3) (307 SE2d 667) (1983) (trial counsel's failure to exercise reasonable diligence in investigating defendant's case and locating witnesses constituted ineffective assistance of counsel); see also *Skillern*, supra at 36 ("When inadequate representation is alleged, [one] critical factual inquiry . . . relates to . . . whether trial counsel . . . adequately investigated the facts and the law.").

[14] See *Strickland v. Washington*, 466 U. S. 668, 691 (104 SC 2052, 80 LE2d 674) (1984) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

[15] Compare *Cowan*, supra at 397 (ineffective assistance of counsel claim failed where evidence showed that counsel's investigator looked for, but did not find, purported witness and defendant failed to produce evidence that such a witness actually existed and would have testified).

[16] See *Hamilton*, supra; see also *Code v. Montgomery*, 799 F2d 1481, 1483-1484 (11th Cir. 1986) (counsel ineffective in failing to investigate alibi defense in case resting primarily on testimony of victims and alleged accomplice); *In re Parris W.*, 363 Md. 717, 727-732 (770 A2d 202) (App. 2001) (defendant prejudiced by trial counsel's failure to properly subpoena witnesses who would have corroborated potentially biased alibi testimony of defendant's father in case where sole evidence linking defendant to crime was victim's identification).

DECIDED JUNE 11, 2003.

Randolph G. Rich, for appellant.

Daniel J. Porter, District Attorney, Gregory D. McKeithen, Assistant District Attorney, for appellee.