A07A2345. FORD v. THE STATE.

(658 SE2d 428)

ADAMS, Judge.

Following a trial by jury, Rafeal J. Ford was convicted of armed robbery, possession of a firearm during the commission of a crime, and possession of cocaine. On appeal he contends the trial court erred by failing to excuse three jurors, by denying his motion to suppress identification testimony, and by replaying a video of his statement to the jury.

1. "The decision to strike a juror for cause lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion." (Citation omitted.) *Torres v. State*, 253 Ga. App. 318, 319-320 (2) (558 SE2d 850) (2002).

Ford contends that Jurors No. 8 and 20 should have been struck because they indicated that they were unable to communicate in English. See OCGA § 15-12-163 (b). With regard to Juror No. 8, the judge concluded that the juror "showed no visible sign of difficulty" and that in his opinion, the juror's expressed concern with the English language was just a way to get off of the jury. With regard to Juror No. 20, the judge noted that his English was clear and that he only complained about understanding legal terms. Our review of the transcript supports the judge's conclusions and shows that the judge did not abuse his discretion with regard to these jurors. See *Brantley v. State*, 262 Ga. 786, 788 (2) (b) (427 SE2d 758) (1993).

Ford contends Juror No. 9 should have been struck because he had a hearing difficulty. But the record reflects that the juror's difficulty was mostly in one ear, and the court offered amplified headphones to the juror if he were to be selected, which the juror agreed to use. He also responded to almost all the questions asked of him with no apparent difficulty. See also *Carter v. State*, 228 Ga. App. 335, 338 (3) (491 SE2d 525) (1997).

2. Ford contends the trial court erred in denying his motion to suppress the out-of-court, pre-trial identification by the victim during a one-on-one showup. Ford argues that the showup identification was

inherently suggestive. "The identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of (the) defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'This is our suspect.'" (Punctuation and footnote omitted.) *Tenorio v. State*, 261 Ga. App. 609 (1) (583 SE2d 269) (2003).

At the hearing on the motion to suppress, the victim testified that at about 11:00 one evening, he was robbed at gunpoint near the mailboxes at his apartment complex. The victim testified that the robber was in front of him initially and that he had gotten a good look at the robber's face and the gun, which was inches from his face. He characterized the lighting as "fairly decent." Although the robber had a coat over his head, the victim was able to see facial detail such as that the robber was not clean shaven. In fact, at one point, after at least 30 seconds had passed, the robber told the victim to stop looking at him. In his call to the police, the victim described the robber as being a black man of average height, wearing dark pants and a gray pull-over sweatshirt with a hood. He also mentioned that the robber was not clean shaven.

About an hour and a half later, an officer took the victim to the parking lot of an apartment complex across the street from the complex where he lived and where the crime occurred. The officer told the victim that the police believed that they had found the robber and were going to get a warrant. The victim was told that the officers would bring someone out and that he should say whether it was or was not the person who robbed him. A person was brought toward the victim illuminated by the police car spotlight. He was in handcuffs. The victim looked at Ford for about a minute, then identified Ford as the person who robbed him by looking at his face. He explained that he took that much time because he wanted to make sure that he was positive about the identification. The robber appeared to have changed clothes in the interim; a gray hooded sweatshirt and dark pants were recovered from Ford's residence. And Ford's book-in photograph shows that he is not clean shaven. At the hearing, the victim identified Ford as the robber.

Ford's fiancée and the mother of his child testified that during the showup identification, she heard the victim say that Ford looked like the robber, "but he didn't know for sure." Ford, a black male, points out that he was the only person brought to the victim for identification that night and he was the only black male in the courtroom at the time of the in-court identification.

"Although one-on-one showups have been sharply criticized and are inherently suggestive, the identification need not be excluded as long as the identification was reliable notwithstanding any suggestive procedure under all the circumstances." (Footnote omitted.)

*Horne v. State*, 260 Ga. App. 640, 643 (4) (580 SE2d 644) (2003). Factors that may be considered when answering this question include "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, and (4) the length of time between the crime and the confrontation." (Citations and punctuation omitted.) *Fitzgerald v. State*, 279 Ga. App. 67, 68 (1) (630 SE2d 598) (2006).

Here, the witness had an adequate opportunity to view the robber at the scene, he was paying attention, and the lighting was adequate. The victim's behavior even caused the robber to demand that the victim stop looking at him. Given that matching clothing was found in Ford's apartment, where he was apprehended, the victim's description of the robber was fairly accurate. The length of time between the crime and the confrontation was less than two hours. The trial court, therefore, was not clearly erroneous in concluding that the identification was reliable despite any possible suggestion implied by the officers when they told the victim that they had found the man that robbed him and were seeking a warrant. See, e.g., *Horne*, 260 Ga. App. at 643 (4).

3. Finally, Ford contends the trial court abused its discretion by replaying Ford's videotaped statement to the police during jury deliberations. But "the court was authorized to permit the jury to rehear the tape recording [of the defendant's statement] if done so in open court. [Cits.]" *Owens v. State*, 248 Ga. 629, 631 (284 SE2d 408) (1981). The court in this case allowed Ford's statement to be replayed in open court with both Ford and his attorney present. Ford contends the court should have advised the jury that no greater weight was to be given to the evidence. But Ford did not ask for such a limiting instruction, and therefore the point was waived. See, e.g., *Thurman v. State*, 256 Ga. App. 845, 846 (2) (570 SE2d 38) (2002).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 29, 2008.

*Campano & Sperling, James M. Miskell*, for appellant.
*Daniel J. Porter, District Attorney, Jeanette F. Shaw, Assistant District Attorney*, for appellee.