## A09A0421. RANSOM v. THE STATE.
(678 SE2d 574)

MIKELL, Judge.

Davis Tremain Ransom was convicted of first degree arson, OCGA § 16-7-60 (a), and stalking, OCGA § 16-5-90, and was sen-tenced to a total of 21 years, including 16 in prison.[1] On appeal from the order denying his motion for a new trial, Ransom challenges the sufficiency of the evidence to support his arson conviction and the effectiveness of his trial counsel. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that the victim, Brenda Johnson, a 33-year-old civil engineer, lived in a home in Norcross with her three young daughters in July 2005, when she met Ransom while shopping at Kroger, where he worked. Ransom, who was 25 years old, pursued her in the store and gave her his telephone number. Johnson called him. Because Ransom earned little money and had no car, Johnson took him out and gave him rides to work on occasion. Johnson testified that Ransom expressed a romantic interest in her, which she did not share, and began to manipulate her into more frequent contact by claiming he

---

[9] See *Humphrey*, supra; see also *Davis v. State*, 279 Ga. 786, 788 (3) (621 SE2d 446) (2005).

[1] Ransom's 2003 plea to harassing telephone calls and obstruction of an officer was entered in aggravation at sentencing. He had been indicted for, inter alia, making terroristic threats by threatening to murder a woman.

needed rides to work. When she tried to end their relationship, he kept calling her. Johnson finally stopped taking his calls. He left messages, then stopped calling for several days.

Johnson's friend, Timothy Goodloe, visited her throughout the following weekend, which was Labor Day weekend. On that Sunday, Ransom called Johnson around midnight from her neighbor's phone. Ransom had told the neighbor that he needed the phone because his car had broken down. Seeing her neighbor's number on the caller identification device, Johnson answered the call. Ransom said, "I know you have company. You need to come outside and talk to me." Johnson described Ransom's demeanor as angry, upset, and demanding. Frightened, Johnson asked Ransom what he was doing in her neighborhood and told him to leave.

Around 11:30 the next night, Johnson, Goodloe, and the girls were home. The girls were asleep in their bedrooms, and Johnson and Goodloe were watching a movie. Johnson thought she smelled a gas leak. The odor became stronger, and Goodloe went out on the deck to check it out. He saw that the grass was burning. He walked around to another side of the house and found newspaper that had been rolled up and used like a torch. It was sitting on top of the air conditioning unit. Goodloe began dousing the fire with water.

Meanwhile, Johnson called 911 and checked her voice mail on her cell phone. Ransom had left a message at 4:30 p.m. The message was played for the jury but not retained as an exhibit. However, during his cross-examination, Ransom admitted that he stated in the message, "thanks for leading me on[;] you handled your business, now I'm going to handle mine."

John S. Williams, a retired senior fire investigator with the Gwinnett County Fire Department, was called to the scene. He testified that he saw "a rather large pool of ignitable liquid" on top of the air conditioning unit. Forensic testing revealed that the liquid was a "heavy petroleum distillate," such as kerosene or diesel fuel. Williams retrieved a piece of paper, which appeared to be a mailing label, from atop the unit. The paper had been soaked in the combustible liquid and partially burned. However, the following information was clearly printed on the paper:

TERRY RANSOM
1620 PIRKLE RD
NORCROSS GA 30093-2130

Johnson testified Ransom had introduced himself to her as "Terry." The investigation quickly led to Ransom. Williams assembled a photographic array for Johnson's neighbor, and he identified Ransom as the man who used his telephone the night before the fire.

1. Ransom contends that the trial court erred in denying his

motion for a directed verdict of acquittal on the arson charge.[2] He asserts that the circumstantial evidence did not exclude every reasonable hypothesis except that of his guilt. It is true that, in order to justify a conviction based entirely upon circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[3]

> Nevertheless, although the circumstantial evidence must exclude every other *reasonable* hypothesis save defendant's guilt, it need not exclude every inference or hypothesis. If the evidence meets this test, circumstantial evidence is as probative as direct evidence. Whether this burden has been met is a question for the jury. When the jury is authorized to find the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law.[4]

In the case at bar, the state's evidence included a kerosene-soaked, partially burned, mailing label addressed to Ransom. The jury was entitled to infer from this evidence that Ransom left a virtual "calling card" at the scene of the crime. The state also presented evidence of Ransom's escalating obsession with Johnson and the threatening telephone calls he made to her shortly before the fire. The quantum of circumstantial evidence presented by the state authorized the jury to find Ransom guilty of arson beyond a reasonable doubt.[5] Therefore, the trial court did not err in denying his motion for a directed verdict of acquittal.

2. Ransom contends that the trial court erred in rejecting his claim of ineffective assistance of counsel. In order to prevail on this claim, Ransom must show that his trial counsel's performance was deficient and that but for that deficiency, there is a reasonable probability that the result of the trial would have been different.[6]

---

[2] See *White v. State*, 238 Ga. App. 367 (1) (519 SE2d 13) (1999) (alleging that the trial court erred by failing to grant a directed verdict of acquittal is tantamount to challenging the sufficiency of the evidence).

[3] OCGA § 24-4-6; *Morrison v. State*, 220 Ga. App. 151, 153 (1) (a) (469 SE2d 686) (1996).

[4] (Citations and punctuation omitted; emphasis in original.) *Savage v. State*, 229 Ga. App. 560, 563 (494 SE2d 359) (1997).

[5] See, e.g., *Denson v. State*, 259 Ga. App. 342, 345 (2) (577 SE2d 29) (2003) (threats to victims, presence near crime scene, and statement to detective provided sufficient circumstantial evidence to support arson conviction).

[6] See *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009); *Fortson v. State*, 280 Ga. 435, 436 (2) (629 SE2d 798) (2006).

Furthermore,

> [t]he criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[7]

Ransom argues that trial counsel was ineffective by failing to secure the presence of his alibi witness and by failing to prepare him to testify.

(a) *Withdrawal of the alibi defense.* The record shows that on September 29, 2006, trial counsel filed a notice of intent to introduce four alibi witnesses, including three family members who planned to testify that Ransom was at a family function two hours before the crime. The notice stated that the fourth witness, Demetrius Lockhart, would testify that Ransom was with him at an adult entertainment club at the time of the crime. Trial counsel withdrew the notice on October 9, at the beginning of trial. At the hearing on Ransom's motion for new trial, trial counsel, who was retained, testified that he withdrew the alibi defense because he was never able to reach Lockhart at the address or telephone number provided by Ransom and his family despite multiple attempts over a period of several months. Trial counsel further testified that he interviewed Ransom at the jail between 15 and 20 times and spoke to him on the telephone on several more occasions; that Ransom stated that the witness was a convicted felon and likely was avoiding contact due to fear of being arrested on an outstanding warrant; that counsel explained to Ransom that Lockhart might have a credibility problem; and that Ransom's statements concerning his alibi were "definitely inconsistent," such that "the story regarding the alibi witness was somewhat fluid and it changed from time to time." Trial counsel also testified that the family members had supplied written narratives which contained inconsistent statements. Finally, trial counsel testified that he contacted the manager at the club, and he was not familiar with Ransom; and that counsel met with Ransom's previous attorney, who expressed the opinion that Ransom did not have an alibi defense.

Ransom's appellate attorney presented three witnesses at the hearing: Lockhart, Ransom, and Ransom's mother. Lockhart testi-

---

[7] (Citations and punctuation omitted.) *Robinson v. State,* 277 Ga. 75, 76 (586 SE2d 313) (2003).

fied that he and Ransom went to the club at midnight and stayed until 4:00 a.m. or 5:00 a.m. Ransom had testified at trial that he arrived at the club at "exactly 10:00 p.m." and left at 3:00 a.m. Lockhart was not able to explain the discrepancy. Lockhart also admitted that he never returned any calls the district attorney made to his mother's house during the first week in October. Lockhart testified, however, that Ransom's mother had his correct telephone number; that he was not avoiding appearing in court; and that he would have been willing to testify at Ransom's trial. Ransom's mother testified that Lockhart picked her son up from her house between 10:00 p.m. and 11:00 p.m.

Ransom testified and disputed his trial counsel's testimony. However, he testified that he never questioned trial counsel about his decision to withdraw the alibi defense.

Ransom argues on appeal that trial counsel was ineffective for failing to hire an investigator to locate and secure Lockhart's presence at trial. Trial counsel testified, however, that he did not hire an investigator because he was a former police officer and POST-certified instructor, had taught investigation techniques for a number of years, had 31 years of experience as a criminal defense lawyer, and, as he explained to Ransom, would have been able to locate any legitimate witness who wanted to be found. Furthermore, trial counsel testified that he discussed hiring an investigator with Ransom and his mother but they did not believe it was necessary.

Based on this evidence, the trial court did not clearly err in rejecting Ransom's claim that trial counsel rendered ineffective assistance by failing to locate, interview, and secure Lockhart's presence at trial. As the finder of fact at the new trial hearing, the trial court was entitled to believe trial counsel and disbelieve the remaining witnesses on this issue.[8] The trial court was authorized to conclude from trial counsel's testimony that Ransom rejected his offer to hire an investigator and that counsel made reasonable efforts to locate Lockhart and to establish an alibi defense. The fact that trial counsel was unable to do so did not amount to deficient performance.[9] Moreover, based on the inconsistencies in the statements of Ransom and his family members regarding the alibi, and

---

[8] See *Hill v. State*, 285 Ga. App. 310, 311 (1) (645 SE2d 758) (2007); *Daguilar v. State*, 275 Ga. App. 756, 759 (2) (621 SE2d 846) (2005).

[9] See *Hudson v. State*, 284 Ga. 595, 598 (5) (a) (669 SE2d 94) (2008). Compare *Tenorio v. State*, 261 Ga. App. 609, 611-613 (3) (583 SE2d 269) (2003) (trial counsel's investigator failed to make a diligent effort to locate potential alibi witnesses, and, instead, asked defendant's wife to search for and subpoena them; trial counsel testified that investigator may have billed for services he never performed; trial counsel found ineffective for failing to conduct a reasonable investigation).

the credibility issues regarding the alibi witness, counsel made a reasonable strategic decision to withdraw the alibi defense. Thus, it cannot be said that counsel performed deficiently in this regard.[10]

(b) *Preparation to testify*. Ransom next asserts that trial counsel was ineffective because he insisted that Ransom testify on his own behalf yet inadequately prepared him to do so. We disagree. Ransom's contention that counsel forced him to testify is refuted by trial counsel's testimony to the contrary at the new trial hearing. While Ransom's testimony on this issue conflicted with that of his trial counsel, that conflict was a matter for the trial court to resolve. Thus, this claim of ineffectiveness fails.[11]

Ransom's claim that trial counsel did not adequately prepare him to testify also fails. Trial counsel testified that he prepared Ransom to testify by telling him to explain about his relationship with the victim, his location at the time of the crime, why he made a telephone call from the neighbor's house, and various other matters. Although Ransom denied having this discussion, the trial court was authorized to disbelieve him.[12] Finally, we note that the trial court fully explained Ransom's constitutional rights before he testified at trial. During the colloquy, trial counsel stated that he and Ransom had discussed the decision on several occasions during the week before trial. The trial court did not err in denying Ransom's claim of ineffective assistance of counsel.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 15, 2009.

*Pamela T. Britt*, for appellant.
*Daniel J. Porter, District Attorney, Jon W. Setzer, Assistant District Attorney*, for appellee.

---

[10] See *Upton v. Parks*, 284 Ga. 254, 257-258 (2) (664 SE2d 196) (2008); *Fortson*, supra at 437 (2) (b).

[11] *Thomas v. State*, 285 Ga. App. 290, 293-294 (2) (645 SE2d 713) (2007); *Phillips v. State*, 278 Ga. App. 198, 203 (2) (b) (628 SE2d 631) (2006).

[12] *Thomas*, supra; *Phillips*, supra.