A02A1976. RUBI v. THE STATE.
(575 SE2d 719)

BLACKBURN, Chief Judge.

Following a jury trial, Victor Rubi appeals his conviction of two counts of child molestation, burglary, and criminal trespass, contending that the trial court erred in denying his motion for a new trial because (1) the photographic lineups of him were impermissibly suggestive; (2) a witness should not have been allowed to testify further; (3) the denial of his motion for a directed verdict on the peeping Tom charge was error; (4) a Gwinnett County conviction was impermissibly used in aggravation of punishment; and (5) his trial counsel rendered ineffective assistance. For the reasons set forth below, we affirm.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Rubi] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Honeycutt v. State.*[1] See also *Jackson v. Virginia.*[2]

So viewed, Rubi was involved in two incidents occurring in July and August 1997. The first occurred on July 27, 1997, between 4:00 and 5:00 a.m. when M. F., a 15-year-old boy, woke his mother, reporting that someone had tried to enter through his bedroom window. She looked out the living room window and did not see anything, but after her son approached her a second time with a similar complaint, the mother again checked outside and saw a shadow near the boy's window. She walked out the back door and around the corner of the house, where she confronted Rubi, who was leaning on a van and

---

[1] *Honeycutt v. State*, 245 Ga. App. 819 (538 SE2d 870) (2000).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

pulling on his exposed penis. Rubi ran when she told her son to telephone the police. Later, the police found that the screen had been pulled away from the boy's window.

The second incident occurred in early August while M. H., a 12-year-old girl, was visiting her father. On a couple of occasions, as she was riding her bike, M. H. observed a man, who was known as Victor in the neighborhood, near the side of a neighbor's home masturbating with his shorts around his ankles. Several days later, on August 6, 1997, M. H. was sleeping in her gown on a pallet on the living room floor of her father's house. She awoke about 2:00 a.m. to observe Rubi lying naked beside her. He was masturbating and touched her on the buttocks. A few minutes later, Rubi crawled down the hallway toward the kitchen. M. H. woke her father and told him what had happened. They discovered a shirt and pair of shorts in the kitchen which the victim had seen Rubi wearing on the night before the incident. Rubi had entered the house by an open kitchen window from which the screen had been removed.

After these incidents, Rubi was identified in a photographic lineup by M. H., by M. F., tentatively, and also by M. F.'s mother. He was identified at trial by all three victims.

Rubi was originally tried on January 8, 2001, for three counts of child molestation, attempted burglary, burglary, and criminal trespass. The trial court granted a directed verdict on one count of molestation, and the jury acquitted Rubi of criminal attempt to commit burglary. On the other charges, the ones at issue in this case, the jury was deadlocked and a mistrial was declared. This appeal concerns the second trial on those remaining charges.

1. Rubi contends that the trial court should not have accepted the findings of the trial court in his first trial denying his motion to suppress the pre-trial photographic identification by the victims. Prior to the initial trial, at the hearing on Rubi's motion to suppress, he argued that the pre-trial photographic lineup was impermissibly suggestive because the five other individuals in the lineup had different skin coloration, hair, and facial hair than he did. The trial court found the photographic lineup was not impermissibly suggestive, and, at the second trial, that trial court judge adopted those findings on this issue.

Although Rubi renewed the motion to suppress at the second trial, he produced no further evidence and argument for the trial court to consider. In addition, no further argument was presented during the new trial motion hearing. "When reviewing a ruling on a motion to suppress, this Court must construe the evidence most favorably toward upholding the trial court's findings and judgment,

unless they are clearly erroneous." *Manning v. State*.[3] Therefore, unless the initial trial court's finding on the motion to suppress was clearly erroneous, the adoption of that finding at the second trial was not reversible error.

An identification procedure is impermissibly suggestive when "it leads the witness to an all but inevitable identification of a defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'This is our suspect.'" *Upshaw v. State*.[4] At the hearing on the motion to suppress, the initial trial court heard the testimony of the police detective who created the photographic lineup and presented it to M. H., M. F., and his mother. The detective read an admonition form to M. H. before her identification, instructing her that she did not have to select anyone and reminded her that hairstyles and facial hair could change. He also told her that the photographs might not depict the true complexion of a person. The same process was conducted with the other victims. The photographic lineup, itself, and the admonition forms were reviewed by the trial court before it denied Rubi's motion to suppress.

Based on our review of the record, including the officer's testimony, the admonition forms, and lineup photographs, we conclude the initial trial court's finding was correct that the photographic lineup did not create the kind of suggestiveness that would inexorably lead the viewer to the conclusion that Rubi was the perpetrator. Accordingly, the trial court in the second trial did not err in relying on those findings.

2. Rubi also asserts that the trial court erred in permitting the State to recall a witness to testify what Rubi had said to him during the trial as he left the witness stand. This witness, a neighbor to M. H.'s father, had testified that he had known Rubi for about six months, having played on the same soccer field. The neighbor stated that Rubi was dressed in the clothing found in M. H.'s home when Rubi had given him a ride home in his station wagon from the soccer field between 8:00 and 9:00 p.m. the night of the incident.

After this testimony and over defense counsel's objection, the trial court permitted the State to recall the witness to testify that as he was leaving the stand, Rubi told him in Spanish that "You'll pay for that." Rubi argues that the recall testimony was more prejudicial than probative because the statement was not relevant to the case, the witness's testimony could not be affected by the comment since he had completed his testimony, and further, the comment may have been misinterpreted by the witness.

---

[3] *Manning v. State*, 250 Ga. App. 187, 189 (1) (550 SE2d 762) (2001).
[4] *Upshaw v. State*, 249 Ga. App. 741, 744 (2) (549 SE2d 526) (2001).

"Where evidence is challenged on the ground that its probative value is outweighed by its tendency to unduly prejudice the jury, the trial court must exercise its discretion in determining admissibility." *Carroll v. State*.[5] Rubi's remark to the witness was spontaneous and not initiated in any way by the State. It was made in the open courtroom, and although it may not have been heard by the judge and jury, the trial court noted that Rubi could be seen speaking to the witness and the witness's reaction could be observed and, therefore, these acts were most likely seen by the jury. A "defendant cannot complain on appeal if the State followed up on issues he himself injected." *Geoffrion v. State*,[6] overruled on other grounds, *Mullins v. State*.[7] If there could be more than one interpretation of Rubi's remark, the appropriate interpretation is for the jury to decide since the jury has the responsibility at trial to determine the facts and the credibility of witnesses and to weigh the evidence. See *Arnold v. State*;[8] *Kilgore v. State*.[9]

In several previous cases, our Supreme Court has addressed threatening actions or language toward witnesses and determined that it was not an abuse of the trial court's discretion to allow witnesses to testify as to these statements because they indicate consciousness of guilt. *Nguyen v. State*;[10] *Ballard v. State*.[11] Moreover, to allow such intimidation would obstruct justice. Although this case differs because the threatening language was made at trial rather than before it, for the same reasons, we find, under these circumstances, the trial court did not abuse its discretion in admitting this evidence.

Even assuming the admission of the recalled witness's testimony was error, its admission was harmless. The victims, M. H. and M. F.'s mother, identified Rubi in both the photographic lineup and in court. The neighbor also identified Rubi. All of them had a sufficient opportunity to observe Rubi. M. H. had the opportunity to observe Rubi for several minutes by the light from the street lamps entering the room where she had been sleeping. M. H. and the neighbor had seen Rubi in the neighborhood preceding the incident and knew him by his first name. Additionally, they both had previously noticed Rubi wearing the clothes discovered in M. H.'s home the night of the incident. M. F.'s mother also had an opportunity to observe Rubi closely during the incident at her home when she confronted Rubi outside. She

---

[5] *Carroll v. State*, 261 Ga. 553, 554 (2) (408 SE2d 412) (1991).
[6] *Geoffrion v. State*, 224 Ga. App. 775, 779 (5) (482 SE2d 450) (1997).
[7] *Mullins v. State*, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999).
[8] *Arnold v. State*, 249 Ga. App. 156, 159 (1) (545 SE2d 312) (2001).
[9] *Kilgore v. State*, 177 Ga. App. 656, 658 (340 SE2d 640) (1986).
[10] *Nguyen v. State*, 273 Ga. 389, 398 (3) (543 SE2d 5) (2001).
[11] *Ballard v. State*, 268 Ga. 895 (2) (494 SE2d 644) (1998).

stood within two to three feet of him, and they were looking directly at each other while she asked him what he was doing at her home.

In addition to the victims' testimony about the incidents for which Rubi was charged in this case, the State presented the testimony of two witnesses who stated that, on earlier occasions, Rubi had committed similar acts during unauthorized entries into their bedrooms late at night. Hence, evidence of guilt was so overwhelming here that it is highly probable that, even if admitting the neighbor's recall testimony was error, the error was harmless.

3. Rubi next argues that the trial court should have granted his motion for a directed verdict on the peeping Tom count since there was no evidence that he peeped or attempted to do so, and, therefore, he could not have been convicted of the lesser included offense of criminal trespass. We find this argument without merit. Rubi was not convicted of the peeping Tom offense, and "[a]n accused may be convicted of a crime included in a crime charged in the indictment or accusation." *Jennings v. State*.[12] There is no argument that criminal trespass is a lesser offense of peeping Tom, and there was sufficient evidence to prove beyond a reasonable doubt that Rubi committed this offense. Accordingly, we find no error.

4. Rubi argues that the trial court erred in considering a Gwinnett County conviction in aggravation of punishment because it had already been used as similar transaction evidence and because the conviction was on appeal and, therefore, not final. In accordance with OCGA § 17-10-2, the trial court is authorized during the pre-sentence hearing to consider evidence in aggravation of punishment, including the record of any prior criminal convictions provided such evidence has been made known to the defendant prior to the defendant's trial.

Here, the State provided notice to defense counsel prior to trial of its intent to introduce three prior convictions in aggravation of punishment. The contested Gwinnett County prior conviction was of simple battery, burglary, surveillance, and obstruction of an officer. The other two prior convictions occurred in DeKalb County: the first was a conviction of criminal trespass, and the second was of burglary, peeping Tom, and a violation of the Georgia Controlled Substances Act.

In order for the above asserted error to be grounds for reversal, Rubi must show harm as well as error. *Potts v. State*.[13] We held, in *Knight v. State*,[14] that the mention of allegedly invalid prior convictions (obtained without benefit of trial counsel) was not harmful, where the record showed that the trial court did not consider them in

---

[12] *Jennings v. State*, 226 Ga. App. 461 (486 SE2d 693) (1997).

[13] *Potts v. State*, 207 Ga. App. 863, 868 (6) (429 SE2d 526) (1993).

[14] *Knight v. State*, 133 Ga. App. 808 (212 SE2d 464) (1975).

imposing sentence. Similarly, in this case, the trial court in its order denying Rubi's motion for new trial specifically found that "it would have sentenced the defendant to forty years in prison, even without considering in aggravation the Gwinnett County conviction under appeal, based on the facts of this case and on the defendant's other criminal history." Further, the sentence imposed was within the limits prescribed by law for the crimes of which Rubi was convicted.

Moreover, Rubi made no objection to the admission of the Gwinnett prior conviction during the pre-sentence hearing. "Objections to evidence cannot be raised for the first time either in a motion for new trial or on appeal, and the admission of evidence will not be reviewed by this court where no objection was made below to its admission." (Punctuation omitted.) *Mitchell v. State.*[15]

5. Rubi contends trial counsel was ineffective because she did not spend enough time with him prior to trial, did not state the basis of her motion and obtain a ruling on the record that Rubi was entitled to a new hearing on the photographic lineup, and did not request a curative instruction regarding references to a prior proceeding.

In order to establish ineffectiveness of trial counsel under *Strickland .v. Washington*,[16] the appellant must show both that his trial counsel's performance was deficient and that the deficient performance prejudiced the defense. See also *Bowley v. State.*[17] "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* supra at 687. There is a strong presumption that trial counsel's performance "falls within the wide range of reasonable professional assistance." Id. at 689.

Contrary to Rubi's contentions, the trial court found that trial counsel adequately consulted with the defendant prior to trial and was well prepared to try the case. Moreover, Rubi himself stated that he had not told trial counsel of any additional theory of defense or any witnesses who were not called to testify who could have testified to facts tending to prove his innocence. The trial court also found that trial counsel's reference to previous testimony did not reveal that there had been a previous trial.

Our review of the record supports the trial court's findings. First, trial counsel adequately consulted with Rubi, meeting with him a number of times prior to his trial and representing him at his initial trial. Secondly, trial counsel did renew her motion to suppress at the second trial prior to the jury's being sworn. Although she did not request another hearing or provide further argument, Rubi has not

---

[15] *Mitchell v. State*, 136 Ga. App. 390, 392 (3) (221 SE2d 465) (1975).
[16] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).
[17] *Bowley v. State*, 261 Ga. 278, 280 (4) (404 SE2d 97) (1991).

shown that there was any additional argument that would have necessitated another hearing or have been persuasive. Finally, the two references to testimony in the preceding week were the result of tactical decisions by trial counsel.

These references were made by trial counsel rather than the State and did not specifically indicate the testimony was received at another trial. Trial counsel testified that she made the references as if each "had been a hearing on the admissibility of evidence prior to trial." Further, our review of the record shows these references were made during cross-examination in an attempt to demonstrate inconsistencies in the testimony of the State's witnesses and, thereby, were a result of trial strategy.

"Trial tactics and strategy do not equal ineffectiveness." *Daniels v. State.*[18] "A defendant's right to effective assistance of counsel does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance." (Punctuation omitted.) *Watkins v. State.*[19] In these circumstances, we cannot say the trial court's finding on Rubi's ineffectiveness claim was clearly erroneous.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED DECEMBER 11, 2002.

*Maria Murcier-Ashley,* for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney,* for appellee.

---

[18] *Daniels v. State,* 238 Ga. App. 511, 521 (3) (e) (519 SE2d 269) (1999).
[19] *Watkins v. State,* 206 Ga. App. 575, 576 (2) (426 SE2d 26) (1992).