A04A1554. HORTON v. THE STATE.
(604 SE2d 273)

JOHNSON, Presiding Judge.

A jury found Vernon Horton guilty of armed robbery, felony theft by taking and possession of a firearm during the commission of a crime. Horton appeals, contending the trial court erred in failing to suppress evidence seized in a search and failing to suppress evidence of the photographic lineup and identification. We find no error and affirm Horton's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or

determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that Horton entered a store wearing a ski mask and brandishing a handgun. While pointing the handgun at the clerk, he demanded and took money belonging to the store and the keys to the clerk's automobile and then left in the clerk's car. The clerk recognized Horton from his size, hands, eyes and the area of his face not covered by the ski mask. Horton had been in the store earlier that morning and came into the store regularly. The clerk also identified Horton, "without hesitation," in a photographic lineup.

The stolen automobile was recovered less than a mile from Horton's mother's home. Horton lived at the home with his mother. One of the car's tires had been replaced by the spare tire in the trunk, and Horton's fingerprints were found on the spare tire mounting cone found in the trunk of the car. The clerk testified that all the tires to the car were in good working order when she came to work on the day of the robbery. She further testified that Horton had never had access to the trunk of the car prior to the day he took it from her at gunpoint.

Shoe impressions made at the store and where the clerk's car was located were also sent to the Georgia Bureau of Investigation crime lab. After identifying Horton as a suspect in the robbery, officers went to Horton's home to search for boots or clothing used in the robbery. Horton's mother allowed the officers into her home and did not object to any search. Horton's mother even directed the officers to a bedroom on the back side of the house. In the bedroom, officers found boot-type shoes and a leather jacket consistent with those worn by the robber.

The shoes were submitted to the state crime lab, and the jury heard testimony from an expert indicating that "it's possible" Horton's left shoe made one of the shoe prints at the store and that two of the prints made at the store were "possibly made" by Horton's right shoe. The expert also testified that two of the shoe prints made where the car was located were "possibly made" by Horton's left shoe. According to the expert, despite the fact that "there appeared to be a rock in the tread sole" of one of the shoes and that "it appears to line up or coincide with the position" of a corresponding feature on the cast impression, the expert could not say that the prints were exactly the

---

[1] *Cockrell v. State*, 248 Ga. App. 359 (1) (545 SE2d 600) (2001).

[2] *Odett v. State*, 273 Ga. 353-354 (1) (541 SE2d 29) (2001).

[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

same. The expert did testify, however, that the comparisons were consistent in overall tread design, the pattern of the sole and the length and size of the shoe.

As for the leather jacket, the officer testified that the jacket was similar to the jacket worn by the robber in the surveillance videotape. It had the same type of drawstring, the same cut and the same cuffs. The leather jacket and boots were admitted into evidence without objection.

1. Horton's first two enumerations of error challenge the admission into evidence of the boots and leather jacket identified as those "possibly" worn during the robbery and which had been found in a warrantless search of his mother's house, where Horton lived. The contention is that the evidence was the fruit of an illegal search and violated Horton's Fourth Amendment rights. However, Horton failed to file any written pre-trial motion to suppress pursuant to OCGA § 17-5-30. By failing to file a written motion to suppress, Horton waived any objection to the evidence on the ground that it was obtained by an illegal search and seizure.[4] In addition, Horton failed to object to the admission of these items at trial. "[T]he failure of the appellant to object to the evidence at the time of its introduction upon the trial was a waiver of any illegal search and seizure."[5]

In any event, it would appear that the warrantless search was valid. "A warrantless search of a residence may be authorized by the consent of any person who possesses a sufficient relationship to the premises to be inspected."[6] Here, officers testified that Horton's mother, who owned the house, consented to the warrantless search. Clearly, Horton's mother possesses a sufficient relationship to the premises to be inspected.[7] While Horton's mother testified at trial that she did not give the officers permission to search her home without a warrant, the officers testified that she did. The trial court, as the finder of fact in any motion to suppress, would have been authorized to believe law enforcement testimony over that of the person who purportedly gave the consent.[8] The admission of evidence is a matter which rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.[9] We

---

[4] *Hawes v. State*, 240 Ga. 327, 333 (7) (240 SE2d 833) (1977); *Turner v. State*, 178 Ga. App. 888 (1) (a) (345 SE2d 99) (1986).

[5] *Fluellen v. State*, 133 Ga. App. 10 (2) (209 SE2d 706) (1974).

[6] (Citation and punctuation omitted.) *Pike v. State*, 265 Ga. App. 575, 577 (1) (594 SE2d 753) (2004); see also *Presnell v. State*, 274 Ga. 246, 252 (8) (551 SE2d 723) (2001).

[7] See *State v. West*, 237 Ga. App. 185 (514 SE2d 257) (1999).

[8] *Johnson v. State*, 266 Ga. 140, 141, n. 6 (464 SE2d 806) (1996); *Lane v. State*, 250 Ga. App. 160, 162, n. 7 (549 SE2d 468) (2001).

[9] See *Gosier v. State*, 241 Ga. App. 384, 386 (1) (526 SE2d 890) (1999); *McBee v. State*, 228 Ga. App. 16 (491 SE2d 97) (1997).

find no abuse of the trial court's discretion in admitting the boots and leather jacket.

2. Horton next contends the boots and leather jacket should have been excluded from evidence because they were (1) irrelevant to the charges against him, (2) highly inflammatory and prejudicial and (3) were not proven to be his. However, Horton failed to object to the admission of these items at trial. He, therefore, waived his right to object on appeal.[10]

Even if Horton had objected at trial, we find the trial court did not abuse its discretion in admitting the items. Admissibility of evidence is a matter which rests largely within the discretion of the trial court.[11] "Any evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant."[12] Even where the evidence is of questionable relevancy or competency, Georgia law favors admission of any relevant evidence no matter how slight its probative value.[13] Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors.[14]

Here, officers testified that the leather jacket found in Horton's mother's home was similar to the jacket worn by the robber in the surveillance videotape. It had the same type of drawstring, the same cut and the same cuffs. Officers and experts further testified that the boots found in Horton's mother's home "possibly" left shoe imprints at the scene of the robbery and at the scene where the stolen car was recovered. The comparisons were consistent in overall tread design, the pattern of the sole and the length and size of the shoe. The items were relevant to a material issue — whether Horton was the offender.[15] The jury in this case was authorized to determine whether the leather jacket and boots were used by Horton during the commission of the crimes.[16]

Horton argues that the items were improperly admitted because the state failed to show that they belonged to him, rather than his brother. The evidence shows that Horton had been identified by the victim as the offender, Horton's fingerprints had been found on an item in the trunk of the stolen vehicle, the items complained of were

---

[10] See *Acliese v. State*, 274 Ga. 19, 20 (2) (549 SE2d 78) (2001); *Humphrey v. State*, 249 Ga. App. 805, 808 (2) (549 SE2d 144) (2001).

[11] *Hestley v. State*, 216 Ga. App. 573, 576 (2) (455 SE2d 333) (1995).

[12] (Citation and punctuation omitted.) *Turner*, supra at 889 (1) (c).

[13] See *Whisnant v. State*, 178 Ga. App. 742, 743 (1) (344 SE2d 536) (1986).

[14] *Hestley*, supra.

[15] See *Turner*, supra.

[16] See *Davis v. State*, 272 Ga. 327, 330 (4) (528 SE2d 800) (2000).

found in Horton's mother's home, where Horton lived and the items were similar to those worn by the offender. It was for the jury to determine whether the items belonged to Horton and whether it was Horton who wore the items during the commission of the offenses.[17] The trial court did not abuse its discretion in admitting the boots and leather jacket into evidence.

3. Horton claims the trial court erred in refusing to suppress the photographic lineup as unduly suggestive, resulting in an irreparable misidentification. Horton contends that he was depicted as the man with the lightest skin among all of the pictured individuals. However, Horton presents no authority to support his assertion that a failure to match exact complexions within a racial demographic in a photographic lineup automatically requires that the lineup be excluded, and we have found none.

Instead, we use a two-part test in determining whether evidence of pre-trial identification should be excluded. The threshold inquiry is whether the identification procedure was impermissibly suggestive.[18] Only if it was need the court consider the second question: whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.[19] An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of a defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect."[20] In reviewing a trial court's denial of a motion to suppress, we construe the evidence most favorably to upholding the court's findings and judgment, and we, therefore, accept the court's ruling unless clearly erroneous.[21]

Here, the officer who compiled the lineup testified that because the clerk informed the officer that "a Horton" had robbed her, and guessed that the "Horton" was "Sterling," a darker-complected brother of the defendant, it was necessary to include darker-complected men in the lineup. In addition, before showing the clerk the lineup, the officer advised her that "the person may or may not be in these pictures." After looking at the photographs, the clerk picked out Horton's picture "without hesitation." The jury also observed the robber on the surveillance videotape, which was admitted into evidence without objection. The record contains no evidence that the photographic lineup was assembled or presented in an impermissibly suggestive manner. Considering the totality of the circumstances, we

---

[17] See *Turner*, supra; see also *Harper v. State*, 251 Ga. 183, 185 (304 SE2d 693) (1983).

[18] See *Brewer v. State*, 219 Ga. App. 16, 20 (6) (463 SE2d 906) (1995).

[19] Id.

[20] *Rubi v. State*, 258 Ga. App. 815, 817 (1) (575 SE2d 719) (2002).

[21] Id.

conclude that the trial court's finding was correct. The photographic lineup did not create the kind of suggestiveness that would inexorably lead the viewer to the conclusion that Horton was the perpetrator.

Moreover, assuming that some taint occurred in the pre-trial identification, a witness' in-court identification may be admitted if it has an "independent origin."[22] In this case, the clerk testified that even before looking at the photographic lineup she knew who had robbed her. She looked the robber in the eyes, and he looked back. According to the clerk, during the robbery she was saying to herself, "I know who this person is." We find from the circumstances in which the clerk observed Horton, that the clerk's in-court identification had an independent origin.

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 1, 2004.

*Hugh D. Harper*, for appellant.
*Fredric D. Bright, District Attorney, Wilson B. Mitcham, Jr., Assistant District Attorney*, for appellee.

