**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A2022. ALBRIGHT v. THE STATE.

HODGES, Judge.

Following a jury trial, Kerry Albright was convicted of two counts of armed robbery and one count of possession of an illegal weapon.[1] He appeals from the trial court's denial of his amended motion for new trial, arguing that the trial court erred in (1) admitting cell phone location data and related expert testimony; (2) rejecting his *Batson* challenge to the State's peremptory jury strikes; and (3) admitting other acts evidence. He additionally contends that his trial counsel rendered ineffective assistance. We find no reversible error.

---

[1] Albright additionally was charged with five other counts of armed robbery (Counts 1-5) and with possession of a firearm by a convicted felon (Count 9). The five armed robbery counts resulted in a mistrial, the State nol prossed the count for possession of a firearm by a convicted felon, and dead-docketed Counts 1-5 and Count 9.

Viewed in the light most favorable to the verdict, see *Cooper v. State*, 306 Ga. 547, 549 (832 SE2d 382) (2019), the record shows that on March 7, March 9, and April 3, 2013, three Dollar General stores in Henry County were robbed at gunpoint. The robberies had similar modus operandi. Two or three masked black men with guns entered the stores near closing time, locked the door behind them, held the employees and customers hostage, emptied cash drawers and safes into a bag, took the victims' phones and wallets, and left.

During the last robbery, a customer attempting to open the store's locked door saw an employee who appeared to be in distress and called the police. The robbers had left the store by the time police arrived, but one victim saw a gold SUV driving by, recognized it as belonging to the robbers, and called out to police, "that's him, that's him."

Police gave chase for approximately 10 miles, but the SUV did not stop even when officers activated their blue lights. The SUV, which was a gold GMC Envoy, then crashed into a tree. By the time police approached the vehicle, the occupants had fled, leaving the driver's side door ajar and only a strong odor of burnt marijuana behind. Officers were unable to track whoever was in the vehicle.

Around this time, police received a call from Chaunya Albright reporting that her GMC Envoy had been stolen. When asked when the theft occurred, she first told the police 11 a.m., then said 10 p.m. She told police that she left her keys in the vehicle, but refused to cooperate when police tried to verify whether the vehicle had been stolen or merely loaned out. An officer went to her house and realized that the stolen Envoy matched the description of the Envoy involved in the armed robberies. While the officer was talking to her, her cell phone kept ringing. She told the officer that she did not know who the caller was, and gave the phone to the officer. The caller, a male, refused to identify himself but asked to speak to his wife. At trial, Chaunya Albright testified that the caller was her then-husband, Kerry Albright, who kept asking why police were harassing them.

The officer noted the number that the call was coming from, and tracked it to Albright's girlfriend, Regina Gipson. The police began an investigation, submitted a probable cause affidavit, and got court orders to retrieve phone call data records related to the Albrights' phones and Gipson's phone. Police also got an arrest warrant for the armed robberies. An officer then used a software program called PenLink, as well as Google Earth, to plot mobile tower locations and identify which towers were

3

near the location of the phone Albright was using, near the three Dollar Generals and during the high-speed chase.

Several months after the robberies, in July 2013, an officer who knew about the outstanding arrest warrants for the robberies recognized Albright driving the Envoy and arrested him. Following his conviction, Albright filed the instant appeal. He does not contest the sufficiency of the evidence.

1. Albright first contends that the trial court erred in admitting the cell site location information ("CSLI") compiled by the police, and related testimony. In connection with this contention, Albright additionally argues that his trial counsel rendered ineffective assistance. We disagree.

The admission of evidence rests within the trial court's sound discretion, and will not be disturbed on appeal absent an abuse of that discretion. *Horton v. State*, 269 Ga. App. 407, 409 (1) (604 SE2d 273) (2004).

(a) Albright first argues that the CSLI should have been suppressed under the Fourth Amendment. This argument has been waived.

The record shows that Albright's counsel first raised what she called something "akin to a motion to suppress" three days after the trial had started. Her argument, however, focused almost exclusively on whether the facts presented by law

4

enforcement were sufficient to justify the court orders used to get CSLI records from cell phone companies. Albright's counsel stated that she was raising this challenge even though she had no knowledge of what information various judges had received before signing the orders. The State pointed out that Albright's lawyer had had copies of the orders since 2014 or 2015, several years before the 2017 trial, and trial counsel acknowledged this.

The trial court then heard testimony from law enforcement officers about, as Albright's trial counsel characterized it, "the issue of whether there [were] . . . reasonable articulable facts presented to the judges in order to get those orders signed." Prior to and during this testimony, the trial court twice asked Albright's counsel if she was raising a Fourth Amendment argument, as opposed to arguing only that the facts underlying the orders were insufficient. Counsel specifically told the trial court she was not raising constitutional challenges. In one instance, after the State raised the issue of the Fourth Amendment, the trial court said, "I don't understand that [Albright is] claiming any constitutional violation, [he is] claiming that the statute requiring [a factual] showing before the issuance of the court order/subpoena was not made. Is that right Ms. Lewis [Albright's trial counsel]?" To which trial counsel responded, "*That's correct*, Your Honor." (Emphasis supplied.)

5

The trial court then found that the facts presented in seeking the orders were specific and articulable enough to show that the records sought were relevant and material to the ongoing investigation.

On appeal, however, Albright appears to argue both that cell phone data was illegally seized pursuant to the Fourth Amendment because he had a reasonable expectation of privacy in that data, and that his counsel really was objecting to a warrantless search. Albright points to a single sentence, when counsel first raised the issue of the possible insufficiency of facts underlying the orders, in which counsel told the trial court that she "*would like to have a motion* on the admissibility of those records because we do not have a search warrant and I have an argument that there was no probable cause for any kind of order to be granted . . . ." (Emphasis supplied.)

As the State contends, and as the trial court found, to the extent that Aldridge attempted to make a motion to suppress, it was neither timely nor in writing, and it did not state facts indicating that the search and seizure violated his constitutional rights. See *Gonzalez v. State*, 334 Ga. App. 706, 708-709 (1) (780 SE2d 383) (2015) (Pursuant to OCGA § 17-7-110 and Uniform Superior Court Rule 31.1, a motion to suppress must be filed within 10 days of defendant's arraignment, unless the trial

6

court extends the time for filing; OCGA § 17-5-30 mandates that a motion to suppress must be in writing and state facts showing the search and seizure was unlawful). When the trial court pointed this out at trial, Aldridge's counsel agreed that this was the standard for a motion to suppress and conceded that no such written motion had been filed. As a result, the trial court found that Aldridge had waived any motion to suppress.

> Oral motions [to suppress] are not authorized. Moreover, this Court has held that a motion to suppress must be filed before trial to effectuate its purpose of avoiding the interruption of trial. Because [Aldridge] failed to timely interpose a proper motion to suppress, and because he did not offer at trial an explanation for this failure, he waived the right to challenge the admissibility of the evidence on this ground.

(Citations omitted.) *Belcher v. State*, 230 Ga. App. 235, 236 (1) (496 SE2d 306) (1998).[2] Failure to file a timely motion to suppress waives even constitutional errors. *Gonzalez*, 334 Ga. App. at 708 (1). We find no error.

Albright also contends that the trial court erred in admitting the CSLI because of the United States Supreme Court's opinion in *Carpenter v. United States*, -- U. S.

---

[2] Albright's contention related to *Simpson v. State*, 277 Ga. 356, 357 (2) (589 SE2d 90) (2003) is unavailing, as this would pertain only where a motion to suppress actually was filed.

7

-- (138 SCt 2206, 201 LE2d 507) (2018). *Carpenter* found that when CSLI is acquired pursuant to a search, the government "must generally obtain a warrant supported by probable cause" prior to getting the cell phone location data. Id. at 2221 (IV). *Carpenter* was decided a year after Albright was convicted, but certiorari had been granted in *Carpenter* just days before Albright's trial began. Albright argues that because *Carpenter* was in the "pipeline" when his case was not yet final, the trial court erred in admitting the CSLI data. See generally *Freeman v. State*, 269 Ga. 337, 339 (1) (c) (496 SE2d 716) (1998) (defining the appellate pipeline as including cases poised "between conviction and direct appeal").

However, as outlined above, trial counsel specifically acknowledged that she filed no motion to suppress, and she disclaimed raising any constitutional argument on this point. When the State attempted to present CSLI evidence from several cell phones, trial counsel did initially object. When the State limited that evidence only to what was taken from one particular cell phone, Albright's counsel said, "If it is limited to documents now being presented with [a particular witness], then *I have no objection*." (Emphasis supplied.) See generally *State v. Williams*, No. S19G0005, 2020 Ga. LEXIS 85, *2 (1) (Ga. Feb. 10, 2020) (finding that use of the pipeline rule to reach the merits of defendant's contention was not authorized where defendant

8

failed to object, and that only plain error analysis applied). Plain error analysis does not apply here, however, as Albright affirmatively waived any objection to the admission of this evidence. See *McAllister v. State*, 351 Ga. App. 76, 88-89 (3) (830 SE2d 443) (2019) (where counsel affirmatively stated he had "no objection" when certified copies of convictions were tendered into evidence, "plain error does not even apply to these circumstances and this enumeration presents nothing for us to review") (citations and footnotes omitted).

(b) Albright next argues that his trial counsel rendered ineffective assistance in failing to file a motion to suppress the CSLI pursuant to the Fourth Amendment. At the motion for new trial hearing, trial counsel acknowledged that she had not filed a Fourth Amendment motion to suppress. She testified that if she had thought she had a legal basis to do so, she would have.

> To prevail on an ineffective assistance claim, Aldridge
>
> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

9

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

However, "[t]he Sixth Amendment affords appellant the right to representation by trial counsel who is reasonably effective, not representation by counsel who is prescient." *Green v. State*, 191 Ga. App. 807, 808 (383 SE2d 134) (1989) (finding no ineffectiveness where counsel failed to object to jury charge which was not deemed erroneous until the issuance of a case that had not been decided at time of trial).

Even under *Carpenter*, however, the defendant first had to establish standing and an expectation of privacy. As our Supreme Court found in *Hampton v. State*, 295 Ga. 665 (763 SE2d 467) (2014), OCGA § 17-5-30 can provide statutory authority for suppression in the context of cell phones,

> but under that statute, a pretrial motion to suppress is available only to the person aggrieved by an unlawful search and seizure. . . . A Fourth Amendment analysis is appropriate[.] . . . [R]ights under the Fourth Amendment are personal, and in order to challenge the validity of a government search an individual must actually enjoy the reasonable expectation of privacy, that is, *the individual must have standing*.

(Citations and punctuation omitted; emphasis supplied.) Id. at 669 (2).

In the context of this claim of ineffective assistance of counsel, Aldridge contends that the trial court erred in denying his motion for new trial by finding that he lacked standing and had shown no expectation of privacy in a cell phone which was registered to his girlfriend.[3] He essentially contends that even if he did not affirmatively present evidence of his standing, he can rely on evidence presented by the State which shows he had standing. We find no error.

On appeal, Aldridge relies on our Supreme Court's recent opinion in *Bourassa v. State*, 306 Ga. 329 (830 SE2d 189) (2019), which found that there is

> no categorical bar that precludes a party seeking standing from pointing to evidence (as opposed to mere arguments) offered by the other party; . . . the defendant may not rely on positions the government has taken in the case but must present evidence of his standing, *or* at least *point to specific evidence in the record which the government presented that established his standing*."

---

[3] We note that a movant's standing to challenge a search or seizure is a threshold issue that a court must address when ruling on the motion to suppress. *State v. Cooper*, 260 Ga. App. 333, 334 (1) (579 SE2d 754) (2003). Here, there was no proper motion to suppress.

11

(Citations and punctuation omitted; emphasis in original.) Id. at 335.[4] Aldridge

provides no record citations indicating he "point[ed] to specific evidence in the record

which the government presented that established his standing" either at trial or on

motion for new trial. See id. Although on appeal, Aldridge now points to conflicting

testimony from his wife and from law enforcement about the ownership or control of

the cell phone used to garner the CSLI data, "[w]here the evidence relevant to the

issue of standing is in conflict, we will defer to the trial court's findings related to

those disputed facts and construe the evidence most favorably to support the trial

court's ruling . . . ." (Citation and punctuation omitted.) *Barlow v. State*, 327 Ga. App.

719, 722-723 (1) (761 SE2d 120) (2014).

As such, given that Aldridge lacked standing to assert an expectation of privacy

in the CSLI data, we can find no ineffective assistance in counsel's failure to file a

motion to suppress.

---

[4] We note that the trial court did not find that Aldridge lacked standing because *he* failed to present *his own* evidence regarding standing. The trial court's order addresses the issue in passive voice, merely finding that "no evidence was presented" and that "[a]ppellate counsel did not present any evidence" from any source. This finding presents no error under *Bourassa*.

(c) Albright next contends that the trial court should have excluded all testimony from a police officer who testified regarding CSLI data in the context of the use of PenLink software, because PenLink had not been shown to be scientifically reliable. This enumeration presents no basis for reversal.

Although Albright points us to various parts of the record where his counsel objected, these objections all were foundational objections to the admissibility of cell tower maps. The trial court later excluded some of the maps, which purported to show in "pie chart" format the geographic range within which cell tower data could pinpoint the location where a call was made, on the basis that there was insufficient evidentiary foundation for the jury to consider this testimony and evidence. Trial counsel requested a curative instruction that the jury "disregard that *specific piece of testimony* and that specific evidence and *make it clear that the rest of the evidence they can consider*, give whatever weight they want to it[.]" (Emphasis supplied.) The trial court said it would do so and that it would make only a "brief mention" of the excluded testimony, and counsel agreed. The court did just that in its curative instructions, and trial counsel raised no objection.

Albright has not cited anything in the record indicating that trial counsel ever asked the court to exclude the officer's testimony *in its entirety* on any basis. Albright has thus waived any ability to object to the officer's testimony in its entirety. See *Moss v. State*, 191 Ga. App. 387, 388 (1) (381 SE2d 765) (1995) (defendant waived objection to witness's testimony on the basis of State's failure to disclose certain reports because defendant failed to seek to exclude testimony of that witness). Further, given that trial counsel agreed to the trial court's curative instruction telling the jury to exclude from its consideration *only* the portion of the officer's testimony related to the pie chart maps, Albright "cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice." (Citation and punctuation omitted.) *Robinson v. State*, 332 Ga. App. 240, 244 (2) (771 SE2d 751) (2015).[5] We find no error.

2. Albright argues that the trial court erred in admitting certain CSLI documents as business records because the affidavit certifying the documents' authenticity was dated incorrectly, and no adequate foundation regarding the

---

[5] Albright does not contend that trial counsel was ineffective on this point, so we do not consider that issue on appeal.

documents' authenticity was laid to explain this. Although Albright contends that these documents were admitted "over objection," we disagree.

Trial counsel initially moved in limine to exclude the cell tower location evidence spreadsheet and the "pinging evidence" used to track a phone on the basis of hearsay and lack of a foundational witness. The State responded that it would present expert witness testimony, and when the trial court asked if it was correct that a properly qualified expert could offer an opinion on hearsay evidence, Albright's counsel responded, "That is the law," and agreed that this would not be a problem. At trial, the State moved to admit the records and the trial court asked Aldridge's counsel if she had any objections. She objected, stating that the affidavit allowing the records in through the business record exception was limited to one phone number on one date, but that the State was attempting to introduce records from three different phone numbers. The State clarified that it was only seeking to tender the records for that one particular phone number, and Albright's lawyer stated that if the documents were so limited, "I have no objection." The records were admitted.

After the witness began testifying about the documents, as reflected over several pages of the transcript, Albright's counsel belatedly objected because she noticed that the affidavit authenticating the previously admitted documents had a date

15

that was different from the date on the documents. The trial court pointed out that the documents already had been admitted and that "if you had that objection you should have made that objection before we admitted all this stuff. It's already been allowed in evidence." Trial counsel stated that "it was my misunderstanding that the documents – the dates of the documents match the date of the affidavit and that is apparently not correct." The trial court ruled that it would let the jury decide what weight to give to the evidence.

The trial court then noted an apparent error in the affidavit's date, but found that this did not affect the authenticity of the records tendered. It noted that "[t]his actually was tendered and allowed without objection except there was a question about some of the documents that related to a different cell phone number." Albright's trial counsel did not disagree.[6]

"Generally, to preserve appellate review of a claimed error, there must be a contemporaneous objection made on the record at the earliest possible time.

---

[6] We note that the trial court found that Albright's counsel "was properly served the records" prior to trial, and that the notice she received stated that the records would be entered by affidavit pursuant to OCGA §§ 24-8-803 (6) and 24-9-902. The record supports this. Albright does not challenge this finding on appeal.

16

Otherwise, the issue is deemed waived on appeal."[7] (Citation and punctuation omitted.) *Benton v. State*, 300 Ga. 202, 205 (2) (794 SE2d 97) (2016). Because there was no contemporaneous objection, this contention is subject only to plain error review. See *Fraser v. State*, 329 Ga. App. 1 (763 SE2d 359) (2014). "A finding of plain error requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, i.e., it affected the outcome of the trial court proceedings." (Citation and punctuation omitted.) Id. "[P]arties should be advised that the hurdle to establishing plain error is high, . . . and therefore that the failure to specifically articulate how the alleged error satisfies this high standard increases the likelihood that their claims in this regard will be rejected." *State v. Kelly*, 290 Ga. 29, 32 (1), n. 2 (718 SE2d 232) (2011). On appeal, Albright argues that "the affidavit [authenticating the records] was dated June 7, 2017–long after the 2013 orders seeking the records." As this affidavit apparently was prepared so that the underlying exhibits could be admitted for trial, which began June 13, 2017, rather than in relation to the prior orders seeking records,

---

[7] Albright does not contend that trial counsel was ineffective in failing to raise a contemporaneous objection, so we do not address the matter on appeal.

17

we do not see how this affected Albright's substantial rights, nor does he present an argument directly addressing this point. We find no plain error.

3. Albright argues that the trial court erred in rejecting his challenge to the State's peremptory jury strikes pursuant to *Batson v. Kentucky*, 476 U.S. 79 (106 SCt 1712, 90 LE2d 69) (1986). We find that Albright waived this issue.

> The resolution of a *Batson* challenge at the trial court level involves three steps: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent.

(Citation omitted.) *Coleman v. State*, 301 Ga. 720, 723 (4) (804 SE2d 24) (2017).

After voir dire, both the State and Albright raised the issue of race-based jury selection. Albright raised a concern that the State had used seven of its nine peremptory strikes for prospective jurors who were African-American. The trial court responded that "we have seated five jurors of twelve or thirteen that appear to be of African descent or of mixed race" to which Albright's counsel responded "six African American females . . . ." After the trial court expressed some concern that the racial makeup of the panel as a whole had not been identified, the State said that it had "no

18

objection with the makeup of the jury." Albright's counsel said, "*Neither does the defense*." (Emphasis supplied.) She then added that she "simply ha[d] to preserve the record."

The trial court responded that if she wished to preserve the record, she needed to identify the racial makeup of the panel, because "neither side is offering any evidence even to establish what race any particular juror is[.]" The trial court noted that it could only make "assumptions" as to the racial makeup of the entire panel because it had already excused the jurors when counsel for the State and the defendant each raised the issue of race in the context of the other's peremptory strikes. The trial court indicated that the State did not need to present reasons for its strikes because the defense had not made a prima facie case, but the State proceeded to offer explanations for its strikes anyway. After the State presented its race-neutral reasons, the trial court asked Albright's counsel if she wished to comment, and she said she did not. The trial court then found that the State had articulated race-neutral reasons for each of its strikes.

Albright now argues that the trial court erred in failing to decide whether he had proven the State's discriminatory intent. As an initial matter, Aldridge presented nothing at trial, and did not argue, that the State had any discriminatory intent. As

noted above, Albright's trial counsel also specifically stated that she had no objection to the makeup of the jury. See *Adams v. State*, 203 Ga. App. 794, 796 (4) (418 SE2d 68) (1992) (Where "[t]rial counsel for defendant perfected the record on how the State used its preemptory challenges during jury selection but insisted that he was not making a motion or objection to challenge the jury selection in this case[,]" the *Batson* challenge was waived because it was raised for the first time on appeal.). Here, Albright did not raise a *Batson* challenge until his amended motion for new trial. "A *Batson* issue must be raised in a timely manner, and *after* trial is too late." (Citation and punctuation omitted; emphasis in original.) *Spencer v. State*, 260 Ga. 640, 642 (1) (e) (398 SE2d 179) (1990). After initially raising the issue, Albright's trial counsel specifically disclaimed any objection to the racial makeup of the jury. "By failing to interpose an objection to the State's procedure at trial, appellant has waived his right to present the issue before this [C]ourt[.]" (Citation and punctuation omitted.) *Ford v. State*, 180 Ga. App. 807, 808 (2) (350 SE2d 816) (1986).

4. At trial, Albright's ex-wife testified that he had abused her in the past. The trial court admitted this as evidence of her bias. On appeal, Albright argues that the trial court improperly allowed "other acts" evidence under OCGA § 24-4-404 (b)

without balancing its probative versus prejudicial value under OCGA § 24-4-403, and without requiring proper notice from the State. We disagree.

At trial, Chaunya Albright testified that she did not want to testify and was only present pursuant to the State's subpoena. She testified that on the day of the last robbery, she reported that her Envoy had been stolen because Albright ordered her to do so. She lied to police about this because he had abused her in the past and she feared that if she did not report the SUV stolen, she would "suffer the consequences later on."

Albright's trial counsel objected based on relevance and on lack of notice, but the trial court found that the evidence was relevant and specifically instructed that the ex-wife's testimony not encompass any specific prior incidents or crimes. On motion for new trial, the trial court found that the abuse evidence had no similarity to the charged crimes and was admissible to show the ex-wife's bias rather than Albright's character.

We find that the evidence that Albright abused his ex-wife was not introduced for one of the purposes listed in OCGA § 24-4-404 (b). Rather, it showed the ex-

21

wife's bias with regard to Albright under OCGA § 24-6-622,[8] which provides, "The state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury." On direct examination, the ex-wife made several statements that were potentially favorable to Albright, including that he never told her the car was involved in a police chase; that although she asked him why he wanted her to report the car stolen, he never told her; and that she was not even sure if he had taken the car on the day in question, a point she affirmed on cross-examination. Her testimony about her fear of abuse was admissible to show that her testimony or evidence beneficial to Albright "may have been motivated by bias in his favor due to fear of his retaliation." (Citation omitted.) *Virger v. State*, 305 Ga. 281, 295 (7) (c) (824 SE2d 346) (2019).

Although on appeal Albright argues that the evidence of prior abuse was prejudicial, he objected below based only upon relevance and lack of notice,[9] and points us to nothing indicating he raised any argument related to OCGA § 24-4-403.

---

[8] Although the trial court allowed evidence of witness bias under a different rationale, we will affirm a judgment that is right for any reason. See generally *Drews v. State*, 303 Ga. 441, 448 (3) (810 SE2d 502) (2018).

[9] Albright makes no argument and points us to no authority requiring that he receive notice of the bias, potentially in his favor, of the State's own (albeit reluctant) witness.

22

The issue, when "considering Rule 622's admonition regarding the admissibility of evidence of witness bias, [is whether] the evidence in question is unfairly prejudicial to the objecting party." *Chrysler Group, LLC v. Walden*, 303 Ga. 358, 369 (II) (A) (812 SE2d 244) (2018) (comparing analysis of OCGA §§ 24-4-403 with 24-6-622). As a result, we only analyze whether admission of this evidence constituted plain error, because although Albright objected, he did so on a different ground from the one argued on appeal. Id. at 369-370 (II) (B).

To establish plain error, an appellant must show an error or defect that he has not "affirmatively waived," that is "clear or obvious," and that "affected [his] substantial rights" by "affect[ing] the outcome of the trial court proceedings"; if these three requirements are satisfied, we have the discretion to remedy the error but should do so only if the error "seriously affects the fairness, integrity or public reputation of the judicial proceedings." (Citation and punctuation omitted.) *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016). On appeal, Albright makes no argument, other than briefly stating that the evidence "was also harmful," as to how this evidence affected the outcome of the proceedings. "Importantly, under plain-error review, the defendant bears the burden of persuasion with respect to prejudice, and must affirmatively show that the error probably affected the outcome below. This showing

23

demands some level of certainty and particularity." (Citations and punctuation omitted.) *Hines v. State*, 350 Ga. App. 752, 754-755 (1) (830 SE2d 380) (2019). As such is lacking here, we find no plain error.

4. Albright contends that his trial counsel was ineffective in failing to move to suppress evidence seized from his car.

We review this contention pursuant to the standard articulated in *Hill*, 291 Ga. at 164 (4), as outlined in Division (1) (b).

Albright was arrested in July 2013, several months after the crimes at issue, when an officer who knew about the outstanding warrants in the instant case recognized him. He was driving with a suspended license in the same Envoy SUV involved in the police chase that occurred following the armed robberies at issue here. A passenger in the vehicle was carrying a firearm. Albright was immediately placed in custody. Police impounded the Envoy, searched it, and found, among other items, a sawed-off shotgun. The shotgun was admitted into evidence after Albright's trial counsel stated that she had no objection.

On appeal, Albright argues that his trial counsel was ineffective in failing to move to suppress the shotgun. At the motion for new trial hearing, Albright's trial

lawyer testified that if she had known she could move to suppress the shotgun, she would have.

> When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion.

(Citations and punctuation omitted.) *Lewis v. State*, 350 Ga. App. 143, 146 (1) (c) (828 SE2d 386) (2019). Here, Albright does not contend that his arrest was illegal, or that the search of his vehicle was the fruit of an illegal arrest. Further, given that police identified the Envoy as the vehicle used as the getaway car in the robberies, and Albright was arrested on the outstanding armed robbery warrants while driving this same vehicle, the Envoy was connected to his arrest.

> Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property[.] . . . The test is whether, under the circumstances, the officer's conduct in impounding the vehicle was reasonable within the meaning of the Fourth Amendment. Reasonable necessity for impounding a defendant's vehicle has been found where . . . the car cannot be safely *or* legally driven, the car is illegally *or* dangerously parked, *or* the car is connected to a crime for which the defendant is arrested.

25

(Citations and punctuation omitted; emphasis supplied.) *Stroud v. State*, 344 Ga. App. 827, 832-833 (3) (812 SE2d 309) (2018). The trial court determined that on motion for new trial, Albright presented no evidence that the car was legally or safely parked, or that it could be safely or legally driven by his passenger, who did not testify, or by anyone else. Thus, Albright has failed to meet his burden of showing that, if trial counsel had moved to suppress the shotgun, the motion to suppress would have been granted.

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur*.